2009 Ark. 455

**John H. BAYIRD, as Administrator for the Estate of Mamie Elliott, Deceased, Appellant,**

v.

**William FLOYD; Beverly Enterprises, Inc.; Beverly Health and Rehabilitation Services, Inc.; Beverly Enterprises–Arkansas, Inc. d/b/a Beverly Healthcare–Monticello; XL Insurance, Inc.; and XL Insurance (Bermuda) Ltd., Appellees.**

**No. 08–1099.**

Supreme Court of Arkansas.

Oct. 1, 2009.

Rehearing Denied Nov. 5, 2009.

David A. Couch, and Brian G. Brooks, Attorney at Law, PLLS, by: Brian G. Brooks, Greenbrier, for appellant.

William & Anderson, PLC, Little Rock, by: Jess Askew III and Stephen A. Hester, Little Rock, for appellee.

DONALD L. CORBIN, Justice.

Appellant John H. Bayird, as administrator for the estate of his deceased mother, Mamie Elliott, appeals the order of the Drew County Circuit Court granting the motion of Appellee William Floyd to dismiss the complaint against him for failure to state facts upon which relief could be granted. Because the circuit court considered "other pleadings and exhibits" that Appellant had not included in his addendum and brief, we determined that the motion to dismiss had been converted to one for summary judgment and ordered Appellant to file a substituted addendum and brief that included the omitted pleadings and exhibits. *Bayird v. Floyd,* 2009 Ark. 254, 308 S.W.3d 142 (per curiam). Appellant has filed a substituted brief and addendum, and we now affirm the order of the trial court dismissing Appellee Floyd.

Appellant filed a complaint alleging that his mother suffered emotional trauma and egregious physical injuries including death due to the care and treatment, or lack thereof, while she was a resident of a nursing home in Monticello, Arkansas, known as Beverly Healthcare—Monticello. Appellant filed suit against the nursing home and related corporations for multiple causes of action arising under principles of equity and the common law and various statutory laws of this state. Appellant also filed suit against Appellee Floyd, alleging he was the chief executive officer in charge at all times relevant to Ms. Elliott's injuries. Appellee Floyd filed a motion to dismiss pursuant to Ark. R. Civ. P. 12(b)(6), arguing, among other things, that the complaint failed to state sufficient facts to establish his individual liability.

The complaint, which was later amended three times, asserted multiple causes of action[1] against multiple defendants.[2] The order appealed from dismissed the complaint as to only one defendant, Appellee Floyd, and contained a certification pursuant to Ark. R. Civ. P. 54(b) that the order was a final judgment. The circuit court made the Rule 54(b) certification at Appellant's request, over Appellee Floyd's objection. Because we consider compliance with Rule 54(b) to be a requirement of this court's subject-matter jurisdiction, we must first address Appellee Floyd's challenge to the factual findings in the circuit court's Rule 54(b) certification. See *Howard v. Dallas Morning News, Inc.*, 324 Ark. 91, 918 S.W.2d 178 (1996).

This court only reviews final orders. Ark. R.App. P.-Civ. 2(a). For an order to be final and appealable, it must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject matter in controversy. *Quality Ford, Inc. v. Faust*, 307 Ark. 371, 820 S.W.2d 61 (1991). It is not enough to dismiss some of the parties; the order must cover all parties and all claims in order to be final and appealable. *State Farm Mut. Auto. Ins. Co. v. Thomas*, 312 Ark. 429, 850 S.W.2d 4 (1993). However, Rule 54(b) provides that a trial court may direct the entry of final judgment with regard to fewer than all of the claims or parties by an express determination that there is no just reason for delay and by the requisite certification and factual findings. When an appropriate certification is made by the trial court pursuant to Rule 54(b), this court considers the judgment final for purposes of appeal. *See id.* (citing *Arkhola Sand & Gravel Co. v. Hutchinson*, 291 Ark. 570, 726 S.W.2d 674 (1987)).

Although this court has previously reviewed a trial court's factual findings with respect to a Rule 54(b) certification, we have done so without expressly stating our standard of review. We take this opportunity to state that a trial court's Rule 54(b) findings and certifications are re-

1. With regard to the multiple causes of action, the complaint stated that they arose under the "common law of the State of Arkansas, the Arkansas Medical Malpractice Act, the Arkansas Long Term Care Resident Rights Statute, the Arkansas Omnibus Long Term Care Reform Act, the Arkansas Deceptive Trade Practices Act, Breach of Fiduciary Duty, Unjust Enrichment, and Equitable Disgorgement, as well as other applicable laws."

2. With regard to the multiple defendants, the original complaint named as defendants the following three corporations; (1) Beverly Enterprises—Arkansas, Inc. d/b/a Beverly Healthcare—Monticello; (2) Beverly Health and Rehabilitation Services, Inc., a nursing home management company providing services to Beverly Healthcare—Monticello; and (3) Beverly Enterprises, Inc., the parent corporation of both Beverly Health and Rehabilitation Services, Inc., and Beverly Healthcare–Monticello. These corporations were referred to collectively throughout the complaint as the Beverly defendants. The complaint also named Appellee Floyd as a defendant, alleging that he was the former chief executive officer and chairman of the board of directors of Beverly Enterprises, Inc., and that at all times relevant to the action, he controlled the operation, planning, management, and quality control of the Beverly defendants. The complaint included Appellee Floyd in its references to the collective Beverly defendants and alleged that the Beverly defendants operated as a joint enterprise and were therefore liable for the others' actions and inactions. The complaint also alleged joint and several liability of all Beverly defendants, their agents, subsidiaries, servants, and employees. Subsequent amendments to the complaint named XL Insurance, Inc., and XL Insurance (Bermuda) Ltd., as additional defendants, alleging they had insured. the Beverly defendants during the time of Ms. Elliott's residency at Beverly—Monticello. Appellee Floyd is the only defendant who has filed a brief in this appeal.

viewable for abuse of discretion, with some deference given to the trial court's decision, since that court is the one most likely to be familiar with the claims and the parties in the case. However, as we have previously acknowledged, the requirement of a final judgment is the cornerstone of appellate jurisdiction, therefore even a trial court's strict compliance with Rule 54(b)'s required findings and certifications are not binding upon this court. As this court has stated, merely tracking the language of Rule 54(b) will not suffice; the record must show facts to support the trial court's conclusions. *Arkhola*, 291 Ark. 570, 726 S.W.2d 674. This is because it is our duty to ensure, sua sponte if necessary, that the limits of our jurisdiction are observed. Thus, "our role on appeal 'is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are judicially sound and supported by the record.'" *Id.* (quoting ⌊₅*Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) (discussing Fed.R.Civ.P. 54(b) which is identical to our own rule)).

In this case, the circuit court included the following factual findings in its Rule 54(b) certification. First, the circuit court found that because all claims against Appellee Floyd had been dismissed, the remaining defendants' liability would be determined on legal theories separate and apart from the dismissed defendant, Appellee Floyd. Second, the circuit court found that judicial economy would be served by an immediate appeal because, if appellate review were delayed, reversal of Appellee Floyd's dismissal would likely require duplicative depositions and a largely duplicative second trial with possible inconsistent verdicts. Certification now, found the circuit court, would allow for a single trial against the remaining defendants. Third, the circuit court found that

a failure to certify would not ensure that only one appeal would ensue, given the likelihood that the parties would appeal both trials. For these reasons, the circuit court concluded that a compelling, discernable hardship would ensue if the case were not certified for immediate appeal and that there was no just reason for delay of entry of a final judgment. Appellee challenges each of these findings and argues that the contrary of these findings would result from an immediate appeal of his dismissal.

We observe that in support of these findings, the circuit court relied upon, among other cases, *Howard*, 324 Ark. 91, 918 S.W.2d 178, and First *Commercial Trust Co. v. Lorcin* ⌊₆*Engineering, Inc.*, 321 Ark. 210, 900 S.W.2d 202 (1995). In both of these cases, this court allowed appeals from orders dismissing fewer than all defendants when doing so would permit the remaining claims and defenses to be presented at a single and timely trial. We cannot say that the circuit court's reliance on these cases was misplaced or that the circuit court failed to make the factual findings necessary to comply with Rule 54(b). Accordingly, we find no error in the circuit court's Rule 54(b) certification, and therefore conclude we have jurisdiction to hear this appeal.

■ Appellant's first argument for reversal of the summary judgment is that Appellee Floyd should be held personally liable for his corporate philosophy emphasizing profits before care. We are thus required to review the law concerning the personal liability of corporate officers.

This court has stated that when "it can be shown that an individual employed by a corporation is personally involved in the events surrounding an injury, the individual may be sued." *McGraw v. Weeks*, 326 Ark. 285, 294, 930 S.W.2d 365, 367 (1996) (citing *Cash v. Carter*, 312 Ark. 41, 847

S.W.2d 18 (1993)). In *McGraw*, a farm manager was found liable by a jury for instructing another employee to use a rice herbicide that damaged nearby cotton. This court affirmed the trial court's refusal to grant a directed verdict for the farm manager because there was sufficient evidence to show he was personally involved. There was testimony that the farm manager made the decision to apply the herbicide and instructed another employee to do so. In contrast, this court in *Cash* affirmed a summary judgment in favor of an individual who was the owner of a parent and related corporations on the basis that there had been no evidence presented that he was directly involved in the events surrounding the injury or that he was acting in any capacity other than a corporate officer when the accident occurred. Hence, this court concluded there was nothing on which to premise individual liability.

As Appellant points out in his brief, both *McGraw* and *Cash* were cited with approval in *In re Speers*, 244 B.R. 142 (Bankr. E.D.Ark.2000), for the proposition that officers and directors of corporations are personally liable to the extent that their tortious acts result in harm to a third party. We also note Appellant's citation to *Scott v. Central Arkansas Nursing Centers, Inc.*, 101 Ark. App. 424, 278 S.W.3d 587 (2008), where the court of appeals, among other cases, cited *McGraw* in affirming a denial of a directed verdict for a corporate owner and officer based on insufficient evidence connecting his corporate philosophy to the level of care at the specific nursing home there in question.

Before applying these precedents to the merits of Appellant's argument, however, we find it helpful to point out our standard of review when a Rule 12(b)(6) dismissal is converted to summary judgment. As we noted previously, although the circuit court's order stated that the case was dismissed pursuant to Rule 12(b)(6), the order also stated that the court considered other pleadings and exhibits in making its ruling. As such, the motion to dismiss was converted to a motion for summary judgment. *Bayird*, 2009 Ark. 254, 308 S.W.3d 142. As we explained, when a trial court considers matters outside the pleadings, the appellate courts will treat a motion to dismiss as one for summary judgment. *Id.* (citing *Kyzar v. City of W. Memphis*, 360 Ark. 454, 201 S.W.3d 923 (2005)). Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Nielsen v. Berger–Nielsen*, 347 Ark. 996, 69 S.W.3d 414 (2002). On appellate review, this court determines if summary judgment was appropriate based on whether the items presented in support of the motion leave a material fact question unanswered, resolving all doubts and inferences against the moving party. *Id.*

The circuit court held a hearing, wherein counsel for Appellee Floyd argued that "it [was] undisputed that [Appellee] Floyd was not in any way involved with Ms. Elliott's care. He did not in any way interact with her; he did not know of the Monticello facility; he was not involved in the operations of the Monticello facility at all." Counsel continued, arguing that Appellant had sued Appellee Floyd personally on five counts and that all five counts must fail as a matter of law. Appellant's counsel conceded that Appellee Floyd was not a medical care provider with respect to medical malpractice and that he was not a licensee with respect to resident rights. Thus, those two causes of action are not at issue. As to the remaining causes of action, Appellee Floyd argued that on the facts alleged, he owed no duty to Ms. Elliott and that unjust enrichment and eq-

uitable disgorgement were "remedies" that were not available on the facts alleged.

Counsel for Appellant responded by summarizing the complaint as alleging that this nursing home was deficiently staffed and deficiently supplied and that those deficiencies caused injury to Mamie Elliott.

The complaint goes further to allege that a corporate philosophy put in place by one of the Defendants, William Floyd, caused those deficiencies. Therefore, there is a direct line between Mr. Floyd and his actions and the injuries caused to Ms. Elliott.

The circuit court took the matter under advisement at the conclusion of the hearing, and later entered a written order. The order recited the pertinent facts alleged in the complaint and then stated the following:

Upon considering as true the allegations contained in the complaint and amended complaints and all other pleadings and exhibits submitted herein, the Court finds insufficient facts to support a claim for which relief can be granted against separate Defendant William Floyd. Therefore the Motion to Dismiss should be granted pursuant to Ark. R. Civ. P. 12(b)(6).

Thus, it is clear that the circuit court's ruling was limited to the facts and did not extend to any of the arguments presented on the specific causes of action, duties, or remedies. Our review on appeal is therefore limited to the ruling that was made concerning the facts.

With the precedents of *McGraw* and *Cash* in mind, as well as our summary judgment standard of review, we now address Appellant's first argument for reversal to determine if there are any material facts in dispute as to Appellee Floyd's personal involvement in the injury to Ms. Elliott. The pertinent facts as alleged in the complaint and recited in the circuit court's order are that Appellee Floyd controlled the operation, planning, management and quality control of the nursing facility where Ms. Elliott resided; that he was aware of the problems that existed at the facility and did not commit adequate resources to address them; and that he was instead focusing on profit and increasing stock price rather than on the care of the residents. Counsel for Appellant stated during oral argument that he considered the circuit court to have recited the facts fairly in his order.

When we review the facts in the light most favorable to Appellant, resolving all doubt and inferences in his favor, we conclude that the facts are silent with respect to Appellee Floyd's personal involvement in the operations of the Beverly–Monticello nursing home where Ms. Elliott resided. We conclude the facts are likewise silent with respect to Appellee Floyd's personal involvement in Ms. Elliott's care. Appellee Floyd's contention that he was in no way personally involved with Ms. Elliott's care simply went undisputed by Appellant. While Appellant did respond with the conclusory allegation that Appellee Floyd was responsible for an overall corporate philosophy causing deficient staffing and supplies that resulted in harm to Ms. Elliott, Appellant never came forth with any facts specifically relevant to Appellee Floyd's direct personal involvement with the level of staffing and supplies used or denied in Ms. Elliott's care at the Beverly–Monticello facility.

We therefore conclude that the facts were undisputed on the issue of Appellee Floyd's lack of personal involvement in the events surrounding the injuries to Ms. Elliott. Accordingly, there is nothing on which to premise Appellee Floyd's individual liability, and we therefore affirm the

summary judgment in his favor on all claims alleged against him.

We are aware of Appellant's remaining arguments for reversal as they relate to specific causes of action, specific duties of care alleged, and specific rights and remedies alleged. We are further aware that these arguments were discussed at the hearing below. However, the circuit court's order does not mention these arguments and rules solely on the basis of the facts alleged. Any personal liability of Appellee Floyd is predicated upon facts showing his personal involvement in the harm alleged, regardless of the specific cause of action or theory of recovery alleged. Therefore, because we have concluded that the lack of facts showing his personal involvement went undisputed, we need not address Appellant's remaining arguments for reversal.

Affirmed.