2011 Ark. 474

**M. Jay CARTER, Appellant**

v.

**Ernie CLINE and Karen Cline, Appellees.**

**No. 10–870.**

Supreme Court of Arkansas.

Nov. 10, 2011.

See also, 2011 WL 2412742.

Joseph Cotten Cunningham, Little Rock, James H. Carter, Jr., Sheveport, LA, for appellant.

Kathryn Bennett Perkins and Amanda K. Wofford, Little Rock, for appellee.

ROBERT L. BROWN, Justice.

Appellant M. Jay Carter, a financial advisor at Clayton, Biltmore & Shouse, LLC, appeals the order of the Pulaski County Circuit Court awarding appellees Ernie and Karen Cline money damages for the breach of a contract to purchase real estate and attorneys' fees and costs. Appellant raises four points for reversal. We reverse on the basis that the circuit court erred in denying Carter's motion for judgment notwithstanding the verdict.

In 2006, Carter hired Robert "Casey" Jones, a real estate agent at The Janet Jones Company, Inc., to represent him in a real estate transaction with the Clines by which he intended to purchase residential property located at 8 Longfellow Place in Little Rock. The real estate contract was signed on June 11, 2006. It contained a provision setting the purchase price for the property at $1,037,500,[1] "subject to Buyer's ability to obtain financing." The contract also included a handwritten pro-

---

1. The purchase price was originally set at $1,000,000 but was later amended to $1,037,500.

vision under this same subsection that the buyer was required to "provide a letter of approval within 10 business days."

On June 21, 2006, Pulaski Mortgage Company approved a loan for Carter to purchase the Longfellow property. The approval letter was conditioned upon, among other things, there being no material change in Carter's financial condition that might adversely affect his current level of creditworthiness, credit score, debt, or income. Pursuant to this conditional approval, Carter was required to submit to Pulaski Mortgage prior to closing an employment certification certifying that his employment and income situation had not changed since his conditional approval. This approval letter from Pulaski Mortgage was submitted to The Janet Jones Company, Inc., within ten business days as required by the contract, and closing was set for September 22, 2006.

According to Carter and the documentation submitted to Pulaski Mortgage, Carter's income began declining in July 2006. On September 8, 2006, Carter orally informed Pulaski Mortgage of his decline in income, and the company requested that Carter provide it with a year-to-date profit-and-loss statement and balance sheet. Carter also contacted Casey Jones on September 8, 2006, and told him that he had a decline in his third-quarter income and that he had informed Pulaski Mortgage of his current financial situation. On September 11, 2006, Carter submitted to Pulaski Mortgage his compensation comparison; a balance sheet for Clayton, Biltmore & Shouse, LLC, as of September 10, 2006; and an income statement for Clayton, Biltmore & Shouse, LLC, from January 1, 2006, to September 10, 2006.

On September 11, 2006, Pulaski Mortgage sent a notice of adverse action to Carter advising him that his "recent application for an extension or renewal of credit has been denied." The company informed him that "the decision to deny your application was based on the following reasons: ... Excessive obligations ... Insufficient income ... Add[itional] current income information furnished by applicant." On September 11, 2006, Shannon Treece, an independent contractor at The Janet Jones Company and the Clines' agent, was informed by Casey Jones that Carter would not be able to close the real estate transaction on the Longfellow property because he had lost his financing approval from Pulaski Mortgage. She then informed the Clines that Carter would be unable to close on their property.

On September 18, 2006, the Clines sued Carter for breach of contract. On April 24, 2007, Carter moved for summary judgment alleging that he was excused from performance under the contract based on the language "subject to Buyer's ability to obtain financing," which was a condition precedent. The circuit court denied Carter's motion for summary judgment. On March 19, 2008, Carter filed a third-party complaint against Casey Jones and The Janet Jones Company, Inc. (the Jones Defendants), for negligence. On September 16, 2008, upon Carter's motion, the circuit court consolidated the two lawsuits for trial. Carter moved a second time for summary judgment on October 7, 2008, and argued that no contract was formed because there was no meeting of the minds. The circuit court again denied his motion.

The jury trial on the consolidated lawsuits commenced on August 17, 2009. At the close of the Clines' case-in-chief, Carter moved for a directed verdict on the grounds that there was no meeting of the minds regarding the contract. Carter also requested that the arguments raised in his motion for summary judgment be incorporated into his motion for a directed verdict. The circuit court denied Carter's motion.

Carter next renewed his directed-verdict motion at the close of all of the evidence and argued, in addition to the argument raised in the previous directed-verdict motion, that the Clines had failed to prove that the fair market value at the time of the breach was $940,000. The circuit court again denied Carter's motion. The jury returned a verdict against Carter and in favor of the Clines on the Clines' breach-of-contract claim and awarded the Clines $42,500 as damages for the breach. The jury also returned a verdict against the Jones Defendants and in favor of Carter on Carter's negligence claims and awarded Carter $30,000 as damages. The circuit court entered an order dated August 31, 2009, in favor of the Clines in the amount of $42,500.

On September 14, 2009, Carter filed a motion for judgment notwithstanding the verdict. The same day, the Clines filed a motion for fees, costs, and prejudgment interest. On October 19, 2009, the circuit court entered an order denying Carter's motion for judgment notwithstanding the verdict. In that order, the court also granted the Clines' motion for fees and costs and awarded them $85,266. The court denied the Clines' motion for pre-judgment interest. On December 1, 2009, the Jones Defendants moved for reconsideration and for a new ·trial, which the circuit court granted on December 28, 2009. In its order, the circuit court explained that it was granting a new trial as between Carter and the Jones Defendants and that the new trial would be limited to deciding the liability of the Jones Defendants to Carter for the liquidated damages established in the first trial.

On February 26, 2010, the Clines filed a Motion for Rule 54(b) Certification. On April 28, 2010, the circuit court entered a final judgment in favor of the Clines in the amount of $127,766 (representing the $42,500 damage award awarded by the jury and the $85,266 for attorneys' fees and costs awarded by the circuit court). In that order, the circuit court certified that there was no just reason for the delay of the entry of a final judgment in favor of the Clines.

## I. *Rule 54(b) Certification*

Carter asserts as his first point on appeal that the circuit judge erred in granting certification under Arkansas Civil Procedure Rule 54(b). We disagree.

Ordinarily, an appeal is to be taken from a final judgment or decree entered by the circuit court. *See* Ark. R.App. P.-Civ. 2(a)(1). Rule 54(b) deals with the finality of orders in connection with judgments upon multiple claims or involving multiple parties. *See Hanners v. Giant Oil Co. of Ark.*, 369 Ark. 226, 253 S.W.3d 424 (2007). It provides in pertinent part:

(1) *Certification of Final Judgment.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination, supported by specific factual findings, that there is no just reason for delay and upon an express direction for the entry of judgment. In the event the court so finds, it shall execute the following certificate, which shall appear immediately after the court's signature on the judgment, and which shall set forth the factual findings upon which the determination to enter the judgment as final is based:

**Rule 54(b) Certificate**

With respect to the issues determined by the above judgment, the court

finds: [Set forth specific factual findings.]

Upon the basis of the foregoing factual findings, the court hereby certifies, in accordance with Rule 54(b)(1), Ark. R. Civ. P., that it has determined that there is no just reason for delay of the entry of a final judgment and that the court has and does hereby direct that the judgment shall be a final judgment for all purposes.

Ark. R. Civ. P. 54(b)(1) (2010). When an appropriate certification is made by the circuit judge under Rule 54(b), this court considers the judgment final for the purposes of appeal. *Bayird v. Floyd,* 2009 Ark. 455, at 4, 344 S.W.3d 80, 83.

Recently, this court reiterated the requirements of Rule 54(b), and observed that under the rule, "the trial court may enter a final judgment or order in a multiple claims or multiple parties case by making an *express determination* that there is no reason to delay an appeal." *Kowalski v. Rose Drugs of Dardanelle, Inc.,* 2009 Ark. 524, 357 S.W.3d 432 (quoting *Franklin v. Osca, Inc.,* 308 Ark. 409, 411, 825 S.W.2d 812, 814 (1992)) (emphasis in original). The court in *Franklin* went on to explain:

> In other words, the court must *factually* set forth reasons in the final judgment, order, or the record, which can then be abstracted, explaining why a hardship or injustice would result if an appeal is not permitted.

*Franklin,* 308 Ark. at 411–12, 825 S.W.2d at 814 (emphasis in original).

A trial court's Rule 54(b) findings and certifications are reviewable under an abuse-of-discretion standard, since the ruling judge is the one most likely to be familiar with the claims and the parties in the case. *Bayird,* 2009 Ark. at 4, 344 S.W.3d at 83–84. This court has stated that merely tracking the language in Rule 54(b) will not suffice; the order of certification must show facts to support the circuit judge's conclusions. *Id.* at 4, 344 S.W.3d at 84. The rule is intended to permit review before the entire case is concluded, but only in those exceptional situations where a compelling, discernable hardship will be alleviated by an appeal at an intermediate stage. *Bank of Ark., N.A. v. First Union Nat'l Bank,* 342 Ark. 705, 30 S.W.3d 110 (2000). The fundamental policy behind Rule 54(b) is to avoid piecemeal appeals. *Id.* An appeal that fails to comply with Rule 54(b) or lacks a proper certification will be dismissed without prejudice, and the parties will be permitted to file at a later date. *Id.*

In the instant case, the circuit judge included the following conclusions in his Rule 54(b) certification. First, the judge determined that certification would avoid unreasonable delay of final resolution of the Clines' claims against Carter. This, he noted, is because of the Clines' inability to collect on their judgments or resolve them pending Carter's new trial with the Jones Defendants. The outcome of that trial, the judge added, will not affect the Clines' judgments against Carter. Second, the judge decided that certification would prevent the Clines from suffering financial loss caused by their inability to earn interest on the $127,766 they are owed, given that the court denied the Clines' request for prejudgment interest. Without certification as a final judgment, the judge stated, the Clines are unable to earn post-judgment interest.

Third, the judge concluded that all of the claims between the Clines and Carter were resolved, and the claims remaining were those brought by Carter against the Jones Defendants that will be tried on the legal theories of negligence and breach of fiduciary duty, which are separate and apart from those claims between Carter

and the Clines. Fourth, the judge added that any subsequent judgment in this case regarding Carter and the Jones Defendants will not vacate the judgments in favor of the Clines, because a judgment in favor of Carter on retrial may mean that Carter can recover all or a part of the money he owes to the Clines on their judgments, or a judgment against Carter on retrial may mean that Carter cannot recover any of the money he owes to the Clines. Under either scenario, the judge determined that the liability and damages established in the Clines' judgments remain the same, and, therefore, certification will promote judicial economy. For these reasons, the judge concluded that there was no just reason for delaying the entry of a final judgment. Carter challenges each of these conclusions.

We hold that the circuit judge did not abuse his discretion in rendering his decision. The record supports the judge's conclusions that all of the claims between the Clines and Carter have been resolved. The jury found that Carter breached the real estate contract and awarded damages to the Clines in the amount of $42,500. The Clines then requested attorneys' fees and costs, which the circuit court awarded. Following the conclusion of the trial and the entry of the circuit judge's judgment, Carter moved for a judgment notwithstanding the verdict, which was denied by the circuit judge. Accordingly, there are no other pending claims between the Clines and Carter.

The record also supports the circuit judge's decision that the outcome of the subsequent trial between Carter and the Jones Defendants would have no effect on the Clines' judgments and that the remaining claims against the Jones Defendants are separate and distinct from those raised by the Clines against Carter. The claims brought against the Jones Defendants by Carter are for negligence and for breach of fiduciary duty. These causes of action relate to the duties owed to Carter by the Jones Defendants only. They do not have any bearing on Carter's potential liability to the Clines for breach of contract. Depending on the outcome of the trial between Carter and the Jones Defendants, Carter may be able to offset none, some, or all of his liability to the Clines for breach of the real estate contract. Nevertheless, this outcome does nothing to relieve Carter of his actual liability to the Clines, as his liability for breach of contract is independent of the Jones Defendants' potential liability to him for negligence and breach of fiduciary duty. Finally, the circuit judge did not merely track the language of Rule 54(b). In sum, the certification by the circuit judge is sufficient to justify the entry of a final, appealable order.

## II. Breach of Contract

Carter's second point for reversal is that the circuit court erred by denying his motion for a directed verdict and his subsequent motion for judgment notwithstanding the verdict, because the Clines failed to prove that he breached their real estate contract. As already related, on June 11, 2006, Carter and the Clines executed a real estate contract wherein Carter agreed to purchase the house on Longfellow Place, "subject to buyer's ability to obtain financing." The contract also included a handwritten provision that Carter was to provide a letter of approval within ten business days.

Carter claims that the "subject to buyer's ability to obtain financing" provision was a condition precedent that had to be met before he became obligated to purchase the Clines' property. He asserts further that when his conditional approval for financing was withdrawn by Pulaski

Mortgage, he was unable to meet the condition precedent and, therefore, was not obligated to purchase the Clines' house. The Clines respond that Carter was in breach of the real estate contract because the financing contingency had been removed when Carter provided the required financing letter within ten business days in accordance with the contract.

Our standard of review for a denial of a directed-verdict motion is well settled:

> [I]n reviewing the denial of a motion for [a directed verdict], we will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. It is not our place to try issues of fact; we simply review the record for substantial evidence to support the jury's verdict. In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. A motion for directed verdict should be denied when there is conflict in the evidence, or when the evidence is such that fair-minded people might reach different conclusions.

*Carr v. Nance*, 2010 Ark. 497, at 15–16, 370 S.W.3d 826, 836 (quoting *ConAgra Foods, Inc. v. Draper*, 372 Ark. 361, 364, 276 S.W.3d 244, 247–48 (2008)) (internal citations omitted). The same standard holds true for a motion for judgment notwithstanding the verdict. *SEECO, Inc. v.*

*Hales*, 341 Ark. 673, 22 S.W.3d 157 (2000). A circuit court may enter a judgment notwithstanding the verdict only if there is no substantial evidence to support the verdict and the moving party is entitled to judgment as a matter of law. *Id.*

It is well settled that a contract should be construed so that all of its parts are in harmony, if that is possible. *Asbury Auto. Used Car Ctr. v. Brosh*, 2009 Ark. 111, at 7, 314 S.W.3d 275, 278. A construction that neutralizes any provision of a contract should never ⎿₁₁⏌be adopted, if the contract can be construed to give effect to all provisions. *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 144, 147 S.W.3d 681, 686 (2004). A condition is defined in the Restatement (Second) of Contracts[2] as "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Restatement (Second) of Contracts § 224.

In the instant case, the real estate contract, as already mentioned, contained the language: "Subject to Buyer's ability to obtain financing on the terms and conditions set forth herein, the Purchase Price shall be the exact sum of . . . $1,000,-000.00[3] . . . ." It also provided, in handwriting: "Buyer to provide letter of approval within 10 business days." Carter submitted an "approval letter" from Pulaski Mortgage within ten business days of the contract. That letter contained the following language:

> The following conditions must be met in order to close your loan: . . . There must be no material change in your financial condition that might adversely

---

**2.** The Restatement (Second) of Contracts eliminates the terms "condition precedent" and "condition subsequent;" under the Restatement, the use of "condition" refers to

"condition precedent." Restatement (Second) of Contracts § 224 rept. nt.

**3.** The purchase price was later amended to $1,037,500.

affect your current level of creditworthiness, credit score, debt or income.

The Clines advance the proposition that the financing condition only required that Carter submit a letter of approval within ten business days, and once he did so, the condition was met and the parties were subject to a binding contract. To support this claim, the Clines presented the testimony of several witnesses who testified that they considered the financing condition to be removed once Carter obtained the letter from Pulaski Mortgage.

The Clines' interpretation, however, ignores the contract-construction principles set out above. Our principles of construction require that the terms of the contract be read together as a whole. When this is done, it is clear that the contract was "subject to [Carter's] ability to obtain financing." It is true that there was the additional condition that Carter provide a letter of approval within ten days, but the controlling condition was that the buyer obtain financing.

Considering the contract as a whole, we conclude that the contract contained a condition precedent that Carter obtain financing. That condition was not met, and because it was not, there was no contract. The condition precedent was not simply that Carter provide a letter within ten business days. Indeed, one of the conditions set out in Pulaski Mortgage's letter was that there be no material change in Carter's income or financial condition. It does not make sense to bind Carter to the contract simply because he provided a letter within ten business days, when that letter was expressly conditional and a material change in financial circumstances did in fact occur.

One case in particular from the court of appeals supports our conclusion. *See Stacy v. Williams,* 38 Ark.App. 192, 196, 834 S.W.2d 156, 158 (1992). In *Stacy,* the parties entered into a real estate contract for the sale and purchase of a farm. After the buyers sought unsuccessfully to obtain financing from several financial institutions, they informed the sellers that they would be unable to purchase the farm. The sellers sold the farm to a third party several months later and sued the buyers for breach of contract. The circuit court found that prior to drafting the loan, the sellers' agent was aware that the buyers could not purchase the farm without first obtaining a loan. Hence, the circuit court concluded that the "[buyers'] ability to obtain a loan was a condition precedent to their performance of the contract and, since they used more than reasonable efforts to obtain a loan and were unable to do so, the contract terminated and was unenforceable." *Stacy,* 38 Ark.App. at 196, 834 S.W.2d at 158.

In a later case, the court of appeals reached a different result. *See Johnston v. Curtis,* 70 Ark.App. 195, 16 S.W.3d 283 (2000). In *Johnston,* a breach-of-contract suit was brought on a real estate contract that contained a specific provision that conditioned the purchase of the house on the buyers' ability to obtain financing for $102,600, or 90% of the $140,000 purchase price. The buyers in *Johnston* were pre-approved for a loan; however, their financing fell through when the house was appraised for $110,000. Thereafter, the parties orally agreed that the buyers would pay $110,000 for the house. The buyers were finally approved by their lender, after some difficulty, for a loan that was 90% of the reduced purchase price of $110,000. The buyers, however, refused to close, because they found the interest rate and the closing costs to be unacceptably high.

In light of this refusal, the court of appeals held in *Johnston* that the buyers

**754**

were not excused from performance under the contract. The court noted that even though the contract made financing a condition precedent, the buyers had been approved for financing by the financial institution but refused to close because of what they considered to be unacceptable terms. In contrast, in the instant case, Carter was never ultimately approved for financing by Pulaski Mortgage because there was a material adverse change in his financial circumstances.

Based on our review of the contract language, we hold that there was a condition precedent included in the real estate contract that required Carter to obtain financing for the purchase, and he was unable to do so. As a result, there was no contract. Accordingly, the circuit court erred in denying Carter's motion for judgment notwithstanding the verdict, because Carter was entitled to that judgment as a matter of law. We reverse the judgment in this matter and remand to the circuit court with directions to enter an order consistent with this opinion. Because we reverse on this point, it is unnecessary to address Carter's other points for reversal.

In addition, we grant the Clines' motion to strike the added paragraphs in the Argument Section of Carter's revised brief. We deny the part of the motion dealing with additions to the abstract and addendum. We will consider attorney's fees and costs associated with the Clines' response to the revised brief upon submission of a petition for the same by the Clines.

Reversed and remanded. Motion to strike granted in part.