

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV

No. CV-13-229

| | |
|---|---|
| MERCY HEALTH SYSTEM OF NORTHWEST ARKANSAS<br><br>APPELLANT<br><br>V.<br><br>DR. LISA MCGRAW<br><br>APPELLEE | **Opinion Delivered** AUGUST 28, 2013<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT, [NO. CV 2006-610-2]<br><br>HONORABLE JON B. COMSTOCK, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

After we dismissed an earlier appeal for lack of a final order, Mercy Health System of Northwest Arkansas brings this appeal from a judgment entered in favor of appellee Dr. Lisa McGraw in the sum of $350,000.[1] For reversal, Mercy argues that Dr. McGraw's contributory negligence bars her recovery because she is claiming only economic damages; that Mercy is entitled to judgment notwithstanding the verdict on Dr. McGraw's negligence and breach-of-fiduciary-duty claims because it owed her no duty; and that Mercy is entitled to judgment notwithstanding the verdict on Dr. McGraw's promissory estoppel claim. Finding no error, we affirm.

This appeal has its origin in a medical-negligence case filed against Dr. McGraw.[2] After

---

[1] *See Mercy Health Sys. of Nw. Ark. v. McGraw*, 2013 Ark. App. 61.

[2] *See Jones v. McGraw*, 374 Ark. 483, 288 S.W.3d 623 (2008); *McGraw v. Jones*, 367 Ark. 138, 238 S.W.3d 15 (2006).

SLIP OPINION

a default judgment in the amount of $500,000 was entered against Dr. McGraw in the underlying action, she filed suit against Mercy, alleging causes of action for negligence, promissory estoppel, violation of the deceptive trade practices act, breach of fiduciary duty, and indemnification. She also sought punitive damages. The basis for Dr. McGraw's suit was her assertion that Cynthia Bosley, the office manager at Mercy's Pea Ridge clinic, and Ann Spencer, the office coordinator at the clinic, assumed the duty to respond to the complaint in the underlying action. Mercy denied that it owed any duty to Dr. McGraw. It also denied that Bosley and Spencer, while employees of Mercy, had authority to assume any obligation on its behalf.

Mercy filed a motion for summary judgment, alleging that, as a matter of law, Mercy did not owe Dr. McGraw any duty to handle the lawsuit or report the matter to her insurance carrier. Mercy also asserted that Dr. McGraw had breached her contractual duties to report any lawsuits to Mercy within ten days of receipt of a summons and to report any lawsuits to her insurer. The court granted the motion as to the deceptive-trade-practices act and the punitive-damages claims, but denied the motion as to Dr. McGraw's claims for negligence, promissory estoppel, breach of fiduciary duty, and indemnification.

The case was tried before a jury over two days in May 2011. At the conclusion of Dr. McGraw's proof, Mercy moved for a directed verdict on each of her claims. The circuit court denied the motion. Dr. McGraw took a nonsuit on her claim for indemnification. Mercy renewed its motion for directed verdict at the close of all of the proof. The court again denied the motion. The case was submitted to the jury on interrogatories:

SLIP OPINION

INTERROGATORY NO. 1: Do you find from a preponderance of the evidence that Cynthia Bosley made an oral promise to plaintiff Dr. Lisa McGraw that the lawsuit filed by Scott and Lizabeth Jones would be taken care of by Mercy Health System of Northwest Arkansas? ANSWER: yes. The interrogatory was signed by the jury foreperson.

INTERROGATORY NO. 2: Do you find from a preponderance of the evidence that defendant Mercy Health System of Northwest Arkansas held out Cynthia Bosley as having authority to bind it to an oral promise to plaintiff Dr. Lisa McGraw that the lawsuit filed by Scott and Lizabeth Jones would be taken care of by Mercy Health System of Northwest Arkansas? ANSWER: yes. The interrogatory was signed by the jury foreperson.

INTERROGATORY NO. 3: Do you find from a preponderance of the evidence that Dr. Lisa McGraw has proven her claim for negligence? ANSWER: yes. The interrogatory was signed by the jury foreperson.

INTERROGATORY NO. 4: Do you find from a preponderance of the evidence that Dr. Lisa McGraw has proven her claim for promissory estoppel? ANSWER: yes. This interrogatory was also signed by the jury foreperson.

INTERROGATORY NO. 5: Do you find from a preponderance of the evidence that Dr. Lisa McGraw has proven her claim for breach of fiduciary duty? ANSWER: yes. This interrogatory was signed by the jury foreperson.

INTERROGATORY NO. 6: Do you find from a preponderance of the evidence that there was fault on the part of Dr. Lisa McGraw that was a proximate cause of any damages she sustained as a result of the lawsuit filed against her by Scott and Lizabeth Jones? ANSWER: yes. This interrogatory was signed by the jury foreperson.

INTERROGATORY NO. 7: Using 100% to represent the total responsibility for the damages proximately caused the fault by both parties, apportion the responsibility between the parties. ANSWER: 30% Dr. Lisa McGraw; 70% Mercy Health System of Northwest Arkansas.[3]

---

[3]Although the circuit court instructed the jury to answer an eighth interrogatory fixing the amount of Dr. McGraw's damages, the parties stipulated that Dr. McGraw's damages were the amount of the judgment entered against her, *i.e.*, $500,000. The jury nevertheless answered the eighth interrogatory and fixed damages at $100,000. The interrogatory was signed by nine jurors. The court addressed the conflict between the percentages found by the

Judgment was entered on May 24, 2011, awarding Dr. McGraw $350,000. On June 7, 2011, Mercy filed a motion for judgment notwithstanding the verdict, arguing that the jury's findings that Dr. McGraw was negligent and 30% at fault served to bar all of her claims. Dr. McGraw filed her response to the motion. The circuit court entered an order on July 22, 2011, stating that Mercy's motion was deemed denied as of July 6, 2011.

Mercy attempted to appeal to this court. However, we dismissed the appeal for lack of a final order on January 30, 2013.[4] The specific defect was that Dr. McGraw had taken a nonsuit as to her indemnification claim, but no order had been entered dismissing the claim.[5] On February 5, 2013, the circuit court entered an order dismissing the unresolved claim with prejudice. Mercy filed its notice of appeal on February 26, 2013.

Mercy first argues that the jury's finding that Dr. McGraw was 30% negligent precludes her recovery. Mercy's argument is that the common law doctrine of contributory negligence applies to bar all of Dr. McGraw's claims because the supreme court has held that comparative fault does not apply in situations where a party seeks only economic damages, as Dr. McGraw does in this case.[6] For her part, Dr. McGraw argues that the issue is not preserved for our

---

jury in Interrogatory No. 7 and the amount of damages fixed in Interrogatory No. 8 with the jury foreperson and counsel. The jury foreperson stated that the jury's intent was that Dr. McGraw be responsible for $100,000 of her damages. Counsel agreed to accept the verdict without sending the jury back to reconsider and resolve the conflict.

[4]*See Mercy Health Sys.*, *supra*.

[5]*Id*. at 3.

[6]S*ee Little Rock Electrical Contractors, Inc. v. Okonite Co.*, 294 Ark. 399, 744 S.W.2d 381 (1988). Mercy also relies on the Eighth Circuit's decision following *Okonite* in *E.D. Smith & Sons, Ltd. v. Arkansas Glass Container Corp.*, 236 F.3d 920 (8th Cir. 2000).

SLIP OPINION



review because Mercy did not object to the jury's being instructed on comparative fault and did not raise this issue until its posttrial motion for judgment notwithstanding the verdict. We agree that the issue is not preserved.

Assuming *arguendo* that Mercy's answer asserting that "any damages sustained by [Dr. McGraw] were proximately caused by her own negligence" was sufficient to raise the issue of contributory negligence, there was no further mention of it until Mercy filed its posttrial motion seeking judgment notwithstanding the jury's verdict. Our supreme court has observed that a motion for a directed verdict is a condition precedent to moving for judgment notwithstanding the verdict.[7] Because a motion for judgment notwithstanding the verdict is technically only a renewal of the motion for a directed verdict made at the close of the evidence, it cannot assert a ground not included in the motion for a directed verdict.[8] Here, although Mercy raised the contributory-negligence argument in its judgment notwithstanding the verdict motion, it failed to make the argument in its directed-verdict motion. Therefore, the contributory-negligence argument is not preserved for our review.

We next address Mercy's point that it was entitled to judgment notwithstanding the verdict on Dr. McGraw's claim for promissory estoppel. In its argument, Mercy contends that any promise Bosley may have made to the doctor was too indefinite and uncertain to be enforceable. It further contends that the doctor's reliance on any such promise was

---

[7]*Boellner v. Clinical Study Ctrs.*, LLC, 2011 Ark. 83, 378 S.W.3d 745; *Carr v. Nance*, 2010 Ark. 497, 370 S.W.3d 826; *Thomas v. Olson*, 364 Ark. 444, 220 S.W.3d 627 (2005).

[8]*Boellner, supra.*

SLIP OPINION

unreasonable in light of the doctor's obligations under the malpractice-insurance policy and other contractual documents with Mercy. We disagree with these arguments.

Our standard of review for a denial of a directed-verdict motion is well settled:

> [I]n reviewing the denial of a motion for [a directed verdict], we will reverse only if there is no substantial evidence to support the jury's verdict, and the moving party is entitled to judgment as a matter of law. Substantial evidence is that which goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. It is not our place to try issues of fact; we simply review the record for substantial evidence to support the jury's verdict. In determining whether there is substantial evidence, we view the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered. A motion for directed verdict should be denied when there is conflict in the evidence, or when the evidence is such that fair-minded people might reach different conclusions.[9]

The same standard holds true for a motion for judgment notwithstanding the verdict.[10] A circuit court may enter a judgment notwithstanding the verdict only if there is no substantial evidence to support the verdict and the moving party is entitled to judgment as a matter of law.[11] We defer to the jury's resolution of the issue unless we can say there is no reasonable probability to support Dr. McGraw's version.[12]

A party asserting estoppel must prove that in good faith he relied on some act or failure to act by the other party and, in reliance on that act, suffered some detriment.[13] Whether

---

[9]*Carter v. Cline*, 2011 Ark. 474, at 10, 385 S.W.3d 745, 752.

[10]*See id.*

[11]*See id.*

[12]*Boellner, supra.*

[13]*K.C. Props. of Nw. Ark., Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 30–31, 280 S.W.3d 1, 14 (2008).

SLIP OPINION

there was actual reliance and whether that reliance was reasonable are questions for the trier of fact.[14]

Dr. McGraw testified that, after she was served with the summons and complaint, Ann Spencer, the clinic's office coordinator, told her that she had spoken with Cindy Bosley, the office manager at the Pea Ridge clinic, and that Bosley had instructed her to take the complaint and summons and to make a copy of the chart notes, and that per office policy they would get the complaint and summons and the chart note to Mercy's in-house counsel. Dr. McGraw also described a meeting later that day with Bosley, Spencer, and Brenda Lee, the doctor's nurse, in which Bosley and Spencer

> assured me that they would get the complaint and summons and chart notes to the in-house attorney. Cindy Bosley promised me that handling the complaint and summons would be taken care of. They both said that they were going by the office policy or the policy to handle a complaint and summons, like there was some procedure.

Nurse Brenda Lee corroborated Dr. McGraw's testimony by testifying in rebuttal that she overheard a conversation between the doctor and Ann Spencer in which Spencer told the doctor

> that she had just gotten off the phone with Cindy Bosley who said that this sort of thing happens all the time, don't worry. We need to get the paperwork, meaning the summons and the chart, to our attorney so that he can take care of it.

Here, Mercy argues that Bosley's promise to "take care of" the complaint cannot be a basis for promissory estoppel. Contrary to Mercy's citation of cases from other jurisdictions, Arkansas case law has indicated that such a promise to "take care of" a problem was specific

---

[14]*Id.*

enough to be relied on.[15] The first interrogatory asked the jury, "Do you find from a preponderance of the evidence that [Bosley] made an oral promise to [Dr. McGraw] that the lawsuit . . . would be taken care of by [Mercy]?" The jury answered in the affirmative, and the trial testimony is enough to pass our substantial-evidence review of the jury's finding.

Mercy next attacks Dr. McGraw's reliance on such a promise as being unreasonable. Mercy's argument is that the malpractice-insurance policy provided by Mercy and the other employment documents signed by Dr. McGraw preclude such reliance. We disagree.

Both Bosley and Spencer told the jury about Mercy's process for handling lawsuits against physician employees and that the process included sending the summons and complaint to Mercy's in-house attorney. Bosley also told the jury that she attended managers' meetings where she was instructed on the procedures to be followed in this situation. She said that this—making sure that legal documents were forwarded to counsel—was part of her duties as office manager. Although there was testimony from Dr. Stephen Goss, the clinic president, and others that Mercy did not have a written policy for handling lawsuits filed against its doctors, they did not dispute Bosley's testimony that this was Mercy's procedure.

Dr. McGraw testified that she relied on Bosley's promise that the summons and complaint would be taken care of by transmitting it to Mercy's in-house counsel, calling her reliance reasonable in light of Bosley's position as administrative director of the clinic. Despite the fact that the employment documents signed by Dr. McGraw referred to the designee of

---

[15]*Cmty. Bank of N. Ark. v. Tri-State Propane*, 89 Ark. App. 272, 280, 203 S.W.3d 124, 128 (2005).

Mercy's chief executive, no designee was ever named, thus supporting Dr. McGraw's testimony that she viewed Bosley as a liaison between the physicians at the Pea Ridge clinic and Mercy's home office. From this, the jury could find such reliance was reasonable.

The insurance policy does not compel a different conclusion. Mercy had the contractual obligation to procure the malpractice-insurance policy and had the policy and all billing correspondence mailed to itself, not Dr. McGraw. Although the policy required Dr. McGraw to notify the insurance company if she was ever sued, it also allowed Mercy to contact the insurance company.

Further evidence that Dr. McGraw's reliance was reasonable is shown by the fact that, after the default judgment was entered against Dr. McGraw, Mercy assisted her in attempting to set aside the default judgment and subsequent wage garnishment. Bosley and Spencer both executed affidavits in support of the motion to set aside the default judgment. Whether a promisee's reliance is reasonable is a question for the jury.[16]

Mercy further argues that it did not hold Bosley out as having the authority to make a promise about the handling of the summons and complaint served on Dr. McGraw. In its answer to interrogatory number two, the jury unanimously found that Mercy held out Bosley as having the authority to bind it to an oral promise to take care of the lawsuit filed against Dr. McGraw. If the facts are in dispute, agency is a question of fact to be determined by the

---

[16]*K.C. Props.*, *supra.*

SLIP OPINION

finder of fact.[17]

It is important to keep in mind that this is not a typical agency case involving a third-party outsider. Instead, Dr. McGraw, Bosley, and Spencer were all employees of Mercy. Bosley was the office manager of Mercy's Pea Ridge clinic, in charge of the day-to-day operations of the clinic. As discussed above, Mercy had a procedure for handling lawsuits against its physicians, albeit unwritten. Moreover, it did not disavow its "take care of it" philosophy until it became clear that the default judgment would not be set aside. *See* Restatement (Second) of Agency § 26 (1958).

Because we affirm the judgment based on the promissory estoppel claim, it is unnecessary for us to discuss Mercy's arguments concerning Dr. McGraw's claims for negligence and breach of fiduciary duty.[18]

Affirmed.

WALMSLEY, HARRISON, and WOOD, JJ., agree.

WHITEAKER, J., concurs.

---

[17]*Crail v. N.W. Nat'l Ins. Co.*, 282 Ark. 175, 666 S.W.2d 706 (1984); *Reed v. Smith Steel, Inc.*, 77 Ark. App. 110, 78 S.W.3d 118 (2002).

[18]The dissent raises the issue of comparative fault being applied to a cause of action for promissory estoppel. However, this is a function of how Dr. McGraw argued the case. After the verdict, she sought to have the judgment modified to reinstate the full amount of her damages as $500,000 and not reduce the award by the amount of her fault. The circuit court denied her motion as moot in the final order stating that Mercy's motion for judgment notwithstanding the verdict had been deemed denied. Dr. McGraw did not file a notice of cross-appeal. A cross-appeal is required when the appellee seeks some affirmative relief that she failed to obtain in the trial court. *See, e.g., Aycock Pontiac, Inc. v. Aycock*, 335 Ark. 456, 983 S.W.2d 915 (1998); *Brown v. Minor*, 305 Ark. 556, 810 S.W.2d 334 (1991).

HIXSON, J., dissents.

**PHILLIP T. WHITEAKER, Judge, concurring.** I agree with the majority's decision that there was substantial evidence to support the jury's verdict on Dr. McGraw's promissory estoppel claim. I write separately to emphasize that I believe there was also substantial evidence presented to support the jury's verdict on Dr. McGraw's negligence claims.

Mercy claims on appeal that it was entitled to a judgment notwithstanding the verdict because it did not owe any duty to Dr. McGraw to ensure that the complaint was forwarded to the insurance carrier. The issue of what duty is owed by one party to another is always a question of law and never one for the jury. *See Capel v. Allstate Ins. Co.*, 78 Ark. App. 27, 77 S.W.3d 533 (2002). When no duty of care is owed, a negligence cause of action is decided as a matter of law and a judgment notwithstanding the verdict is proper. *See D.B. Griffin Warehouse, Inc. v. Sanders*, 336 Ark. 456, 986 S.W.2d 836 (1999). However, a party who gratuitously undertakes a duty can be liable for negligently performing that duty. *See Steward v. McDonald*, 330 Ark. 837, 958 S.W.2d 297 (1997).

Mercy never disputed that its staff had been instructed to copy and forward malpractice actions to in-house counsel when a physician was served with a summons and complaint. While there may have been no written policy with respect to the handling of malpractice actions by clinic staff, there was clearly an unwritten policy on doing so. In fact, Dr. Goss, the clinic president, testified that the clinic needed a more formal process and a flow sheet with check offs to ensure that this scenario would not happen again. There was also no evidence of any written policy specifically disclaiming responsibility for the reporting of

11

malpractice actions to in-house counsel or the insurance carrier by clinic staff. It was also undisputed that the legal documents at issue here were taken from Dr. McGraw by employees of the clinic—acting within the course of their employment—and that an attempt was made by the clinic employees to actually forward those documents to in-house counsel through interdepartmental mail. Clinic staff then advised Dr. McGraw that the matter would be "taken care of." On these facts, I would find that Mercy Health Systems voluntarily assumed a duty to forward the legal documents to the proper party for defense of the malpractice action. It breached that duty when it failed to do so.

**KENNETH S. HIXSON, Judge, dissenting.** I agree with the majority that the issue of contributory negligence was not properly argued below and was not preserved for appeal. However, I dissent from the majority's decision to uphold the judgment based on McGraw's promissory-estoppel claim. I am guided primarily by our supreme court's recent holding in *Courtyard Gardens Health & Rehabilitation, LLC v. Quarles*, 2013 Ark. 228, ___ S.W.3d ___, that while the statements of an alleged agent may be admissible to corroborate other evidence tending to establish agency, neither agency nor the scope of agency can be established by declarations or actions of the purported agent. I would reverse the judgment because there was a lack of evidence that Mercy owed a duty to Dr. McGraw or that Mercy authorized the Pea Ridge satellite office manager to "take care of the lawsuit" or act as its agent in that respect.

The issue of duty is always one for the trial court and not the jury, and if a court finds that no duty of care is owed, a claim of negligence fails as a matter of law and a directed

verdict is appropriate. *D.B. Griffin Warehouse, Inc. v. Sanders*, 336 Ark. 456, 986 S.W.2d 836 (1999). Likewise, the existence of a fiduciary duty and what duty is owed, if any, is always a question of law. *Key v. Coryell*, 86 Ark. App. 334, 185 S.W.3d 98 (2004). Nothing in the law creates a duty for an employer to manage litigation filed solely against its employees, nor does the existence of an employer/employee relationship create a fiduciary duty to defend such claims. Therefore, the trial court should have directed verdicts in favor of Mercy as to Dr. McGraw's claims for negligence and breach of a fiduciary duty.

That brings us to the issue of whether this case can be affirmed on the theory of promissory estoppel, as held by the majority. To prove promissory estoppel, a plaintiff must show that the defendant made a promise, that the defendant should have reasonably expected the plaintiff to act or refrain from acting in reliance on the promise, that the plaintiff acted or refrained from acting in reasonable reliance on the promise to her detriment, and that injustice can be avoided only by enforcement of the promise. *Fairpark, LLC v. Healthcare Essentials*, 2011 Ark. App. 146, 381 S.W.3d 852. In this case because the defendant is a corporation, the question is whether the person who made the promise had the authority to make the promise and bind the company. The promise, even if it can be accurately called that, was made by the Pea Ridge satellite office manager or her assistant.

As an initial matter, the promise to "take care of" the complaint was vague and could have meant a lot of things, including that the complaint would be transmitted to Mercy's in–house counsel. The majority places significant importance on the fact that it was the office policy of Mercy that when a Mercy physician is sued for medical malpractice, the physician

13

is required to inform the hospital president or his assigns of the impending litigation. Specifically, a provision in an agreement between the hospital and the physician provided in pertinent part that the physician agreed to "inform the hospital, through the President or his/her designee of . . . the filing of a lawsuit against me." Mercy, or any other hospital or medical provider, certainly has a legitimate business interest in being informed if one of its physicians is being sued for medical malpractice. However, I cannot find any reason to extrapolate such an inherent business interest into a legal duty or promise to "take care of" and assume the physician's defense of a medical-malpractice lawsuit.

Moreover, in this case there was a lack of evidence that Ms. Bosley, the satellite office manager, or Ms. Spencer, the satellite office coordinator, had actual authority to act on behalf of Mercy in undertaking to handle a medical-malpractice claim against one of Mercy's physicians. Because these employees lacked actual authority, the issue then becomes whether they had apparent authority, and there was no substantial evidence to support such a conclusion.

Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which it holds the agent out as possessing; such authority as she appears to have by reason of the actual authority she has or such authority as a reasonably prudent person, using diligence and discretion, *in view of the principal's conduct*, would naturally suppose the agent to possess. *Sterne, Agree, & Leach, Inc. v. Way*, 101 Ark. App. 23, 270 S.W.3d 369 (2007) (emphasis added). Whether an agent is acting within her apparent authority is a question of fact for the jury, *Walker v. Stephens*, 3 Ark. App. 205, 626 S.W.2d 200 (1981), and



in determining the sufficiency of the evidence we draw every reasonable inference in the light most favorable to the appellee and affirm if there is any substantial evidence to support the verdict. *Ark. La. Gas Co. v. Cates*, 10 Ark. App. 426, 664 S.W.2d 897 (1984).

Even viewing the evidence in the light most favorable to Dr. McGraw, I cannot agree that there was substantial evidence to support the jury's finding that Mercy held Ms. Bosley out as having authority to bind it to an oral promise to "take care of" the medical-malpractice lawsuit.

It is undisputed that both Ms. Bosley and Ms. Spencer undertook to send copies of the complaint to Mercy's in-house counsel and that Ms. Bosley advised Dr. McGraw that they "would take care of it." But this conduct and these representations were *by the alleged agents*, which is insufficient to establish either the agency or its scope. *See Quarles*, *supra*. Focusing on the conduct of Mercy, as we are mandated to do by *Quarles*, Mercy did nothing to hold Ms. Bosley out as having any authority to handle the malpractice suit other than the fact that it made Ms. Bosley the satellite office manager. I submit that the mere fact of Ms. Bosley's being the satellite office manager would not lead one of Mercy's doctors to reasonably conclude or naturally suppose that Ms. Bosley possessed the authority, acting on behalf of Mercy, to promise to handle a medical-malpractice suit filed against that doctor.

Even assuming arguendo that the satellite office manager had the apparent authority to make the statement, still, the "promise" must not be vague or uncertain. A "party asserting estoppel must prove it strictly, there must be certainty to every intent, the facts constituting it must not be taken by argument or inference, and nothing can be supplied by intendment."

*Rigsby v. Rigsby*, 356 Ark. 311, 316, 149 S.W.3d 318, 322 (2004). Even a cursory analysis of the alleged promise, "we will take care of it," shows the inherent uncertainty. Does "take care of it" mean that Mercy will retain a defense attorney at its expense to represent Dr. McGraw? Does it mean that Mercy will forward the lawsuit to Dr. McGraw's insurance carrier? If it really means "take care of it," would that not mean that Mercy will "take care" of the judgment including any excess personal judgment? In my view, these uncertainties leave this lawsuit outside the requirements for promissory estoppel.

Because there was no substantial evidence of any authority, actual or apparent, to bind Mercy to the alleged promise, and because the alleged promise was uncertain and vague, I would reverse the judgment against Mercy.

Furthermore, I would be remiss if I neglected to point out what I perceive as an apparent, unintended consequence of the majority's opinion. By affirming this case on the basis of promissory estoppel, the majority has affirmed a money judgment apportioned on a 70%–30% negligence verdict. Promissory estoppel sounds in contract, and I can find no basis in contract law for apportioning fault in this manner.

For these reasons, I respectfully dissent.

*Wright, Lindsey & Jennings, LLP*, by: *Edwin L. Lowther, Jr.*, *Gary D. Marts, Jr.*, and *Caley B. Vo*, for appellant.

*Shemin Law Firm, PLLC*, by: *Kenneth R. Shemin*; and

*Cullen & Company, PLLC*, by: *Tim Cullen*, for appellee.