Kenneth, S. Hixson, Judge, concurring and dissenting. Our court is in agreement that the jury’s verdict on the tort of outrage must be reversed, but we are in marked disagreement about the cause of action for malicious prosecution and resulting damages. I believe that there was insufficient evidence presented to allow the claim for malicious prosecution to go to the jury, or the court should have granted the motion for' |, ¿judgment notwithstanding the verdict, such that, our court must reverse and dismiss on malicious prosecution and the accompanying compensatory award.[1] Huff and Ward failed to prove the absence of probable cause for charges being filed against them; an essential element of this tort. Furthermore, Family Dollar established that it was entitled to rely, on the prosecutor’s decision to file charges and prosecute Huff and Ward. For these reasons, there was insufficient evidence to submit the plaintiffs’ claims for malicious prosecution to the jury, and the trial court, erred in failing to direct a verdict on Family Dollar’s behalf. Even when we view the evidence in favor of the appellees, which we must, -here is the' essential evidence reflected in the record: • Jimmy Huff testified that over a period of one and one half years, he purchased 12 Family Dollar Store trailers from Dennis Stripling and then resold the trailers. • Jimmy Huff told Detective Galtelli pri- or to. his arrest that Dennis Stripling set the prices on the Family Dollar Store trailers. • Jimmy Huff testified that he sold ten Family Dollar Store trailers to James Kitchens and sold two Family Dollar Store trailers to Rusty Evans. Evans returned his two trailers. • Huff testified that he purchased the first Family Dollar Store trailer from Dennis Stripling for $400 and sold the trailer to James Kitchens' for $1,000 and made a $600 profit. • James Kitchens wrote checks or paid - cash to Huff for the trailers he purchased. • Dan Gazaway, investigator for Family Dollar Store, testified that Jimmy Huff told him that he (Huff) was selling the Family Dollar Store trailers between $1,000 and $1,500 each, depending on the type of trailer. Huff said that 119Pennis Stripling had quoted him a price of between $400-$900 for each trailer. • Jimmy Huff told Detective Galtelli that he delivered cash' to Dennis Stripling for the Family Dollar Store trailers he sold. • Jimmy Huff signed the bills of sale personally and not on behalf of Family DollarStore. • Robert Ward sold 12 Family Dollar Store trailers and bartered another " trailer in exchange for a race car motor. • Checks were written to Robert Ward personally in payment for the trailers, and Robert Ward signed the bills of sales personally and not on behalf of Family Dollar Store. • Robert Ward testified that he sold two . Family Dollar Store trailers to Taylor Stucky Incorporated for $800 each, that he paid Dennis Stripling $400 each for two trailers, and that he doubled his money. ' • Robert Ward testified he sold eight Family Dollar Store trailers to Hart Farms for the salé price of $600 each, that he paid Dennis Stripling $400 for each trailer, and that he made a profit of $200 on each trailer sold. • Both Huff and Ward' testified that they believed that Stripling was delivering the cash payments for the trailers to Family Dollar Store. • It is undisputed that Dennis Stripling was involved in all of the Huff and Ward trailers sales. Prior to trial, Stripling pleaded guilty to a misdemeanor theft charge. • Detective Galtelli testified that the information in his report was based on his own investigation and that all of the information was verified .independent of Family Dollar. • Detective Galtelli testified that: “I determined that charges were appropriate to be filed against Mr. Huff, Mr. Ward, and Mr. Stripling. I came to that determination with the evidence and statements we collected throughout the investigation_ I did not at any point in time take direction from Family Dollar with respect to filing charges against these three men.” Jimmy Huff and Robert Ward retained the services of Chet Dunlap to represent each of them in the criminal matter. Chet Dunlap testified that he agreed there was probable cause to arrest Ward and Huff for theft of property and further testified that he stipulated to the, probable cause on Huff in a bond hearing with a circuit judge.[2] • 12qThe then-prosecutor agreed that probable cause existed to arrest Huff and Ward, even if some of the trailers were given away with Family Dollar’s permission. The then-prosecutor also knew that Huff, sold trailers with Stripling’s permission. We have held that two essential elements of the tort of malicious prosecution are lack of probable cause and malice. Cordes v. Outdoor Living Ctr., Inc., 301 Ark. 26, 781 S.W.2d 31 (1989). “The test for determining probable cause is an objecr five one based not on the accused’s actual guilt, but upon the existence of facts or credible information that would induce a person of ordinary caution to believe the accused to be guilty.” (Emphasis added.) Wal-Mart Stores, Inc. v. Yarbrough, 284 Ark. 345, 348, 681 S.W.2d. 359 (1984). Furthermore, acting upon the advice of counsel is a defense to a charge of malicious prosecution. Kellerman v. Zeno, 64 Ark. App. 79, 983 S.W.2d 136 (1998). To avail itself of the defense, Family Dollar must have made a full, fair, and truthful disclosure of all facts known to it and acted in good faith oii-counsel’s! advice. Malvern Brick & Tile Co. v. Hill, 232 Ark. 1000, 342 S.W.2d 305 (1961). Family Dollar had the burden of proving this defense by a preponderance of the evidence; Eggleston v. Ellis, 291 Ark. 317, 724 S.W.2d 462 (1987), Family Dollar clearly cafried that burden. Giving of information, or even making an accusation of criminal misconduct, does not constitute procurement of the proceedings initiated by the prosecutor if it is left entirely to the discretion of the prosecutor whether to initiate proceedings. ■ Restatement (Second) of Torts § 653, comment g (1977). The exercise of the prosecutor’s discretion makes the initiation 121of the prosecution his own and- protects from liability the person whose information or accusation has led the officer to initiate the proceedings. Id. A viable malicious prosecution case can be maintained when the information provided was known to, be false, or if the'desire of the reporting person to have the prosecution commenced, is the determining factor in the prosecutor’s decision to prpsecute. Id. Our standard of review of the denial of a motion for judgment notwithstanding the verdict is the same as that for a denial of a directed-verdict motion. Carter v. Cline, 2011 Ark. 474, 385 S.W.3d 745. Thus, a circuit court may‘enter &’judgment" notwithstanding the verdict only if there is no substantial evidence to support the verdict and the moving party is- entitled to judgment as a matter of law. Ford Motor Co. v. Washington, 2013 Ark. 510, 17, 431 S.W.3d 210, 220. Here,' the record is ’absolutely void of any evidence of lack of probable cause.[3] Further, the record is replete with evidence that Family Dollar satisfied its burden of proof for the advice-of-eounsel defense. In my opinion, the trial court erred in failing to direct a verdict in favor of Family Dollar and erred in failing to grant the motion for JNOV. There is no substantial evidence to support the jury’s verdict, and I would reverse. I 'am authorized to state that Chief Judge Gladwin joins this dissent, with the exception that he does not join that part discussing remittitur in footnote 1. Concurring in part; dissenting in part. . 1 further submit that, even if there was sufficient evidence to support a jury verdict on malicious prosecution, the jury's compensatory awards of $1.75 million to Huff and $1 million to Ward shock the conscience of the court. I join with the dissent authored by Judge Harrison, in which he explains why these compenáatory awards are excessive and should be remitted. . In Broaddus v. Campbell, 911 S.W.2d 281, 285 (1995), the court of appeals for Kentucky stated that "actions for malicious prosecution have traditionally been disfavored due to the chilling effect on those considering reporting a crime.” further, the court stated that in a malicious-prosecution case, where a defendant agrees or acquiesces to the existence, of probable cause, a malicious-prosecution action cannot be maintained., . Huff and Ward also failed to preseht any evidence of malice or ■ any evidence from which malice may be inferred, which is an essential element of the cause of action for malicious prosecution. Malice has been defined as any improper or sinister motive for instituting the suit. Sundeen v. Kroger, 355 Ark, 138, 133 S.W.3d 393 (2003).